**Jagjit SINGH and Chitra
Singh, Plaintiffs,**

**v.**

**FAMOUS OVERSEAS, INC., Defendant.**

**No. 85 C 3786.**

United States District Court,
E.D. New York.

Feb. 9, 1988.

Burke, Burke & Burke (Gary Farrell, of counsel), New York City, for plaintiffs.

William J. Reilly, New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

This is an action for copyright infringement and unfair competition. The court has jurisdiction under 28 U.S.C. § 1338. In a memorandum and order dated July 21, 1987 this court denied plaintiff's motion for summary judgment because factual issues required a trial. The parties then tried the case to the court.

Plaintiffs, husband and wife, are musicians and composers of Indian music. They gave a performance at Royal Albert Hall in London, England, in May 1982. The performance was recorded and thereafter distributed in two separate cassettes, Volume I and Volume II (the works). In 1983 plaintiffs entered into an agreement with EMI Music Ltd (EMI), of London, England, as agent for Gramophone Company of India (Gramophone), granting it a license to manufacture and distribute the works in India. They did not license the works for distribution in the United States.

Defendant manufactures and sells in the United States cassette recordings of Indian performances pursuant to a license agreement dated April 1, 1983 with Gramophone. The license covered all recordings of Indian origin owned or controlled by Gramophone.

Some time in early 1983 defendant received from Gramophone a copy of a telex containing a list of "new releases" and inviting orders for the recordings on the list. Included in it were the works. Defendant proceeded some time in the spring of 1983 to copy the works, to make approximately 1800 cassettes, and to sell to customers. Defendant sent a sample to EMI and sought in the summer of 1983 to apply for a United States copyright. While that application was pending defendant learned from EMI that Gramophone did not have the right to license the works for the United States. Defendant therefore abandoned its application and ceased manufacture.

Near the end of 1983 Sushil Malhotra, the executive vice president of defendant, happened to meet plaintiff Jagjit Singh in Bombay, India, at the house of a mutual friend. In the course of the conversation Malhotra mentioned to Singh that defendant had made cassettes of the works, had learned that they were not licensed for the United States, and had ceased manufacture. Singh asked for an accounting, and Malhotra replied that when Singh came to the United States they would settle.

Plaintiffs then appointed Kenneth D. Kapoor as agent to represent them in the United States. In July of 1984 Malhotra assured Singh and Kapoor that defendant had ceased to make or sell the works by the end of 1983. On July 27, 1984 Kapoor as agent for plaintiffs applied for a copyright of the works.

Kapoor testified at trial that in May 1985 in Cleveland, Ohio, he was present in the Saree Mahal store and asked for new tapes, that he saw brought into the store two cartons of tapes in boxes with defendant's label on them, that in the boxes were 30 cassettes of the works, and that he bought 18.

Plaintiffs brought this action after settlement discussions became futile.

The court finds that defendant manufactured and sold 1800 cassettes, and that at least 30 of these were sold after July 27, 1984, at a time when defendant had notice that it had no license for the United States.

Plaintiff claims statutory damages under 17 U.S.C. § 504(c) and attorney's fees under 17 U.S.C. § 505, and defendant contends that these remedies are forbidden by 17 U.S.C. § 412. That section provides that, with exceptions not pertinent here, in any action under the copyright laws "no award of statutory damages or of attorney's fees" under sections 504 and 505 shall be made for

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

Defendant manufactured the cassettes in 1983 and made at least some of the sales in that year. As noted above, defendant made other sales after plaintiffs registered the copyright in July 1984. Plaintiffs ask for statutory damages and attorney's fees for the acts of infringement committed after the registration date of July 1984.

Each separate act of infringement is, of course, an "infringement" within the meaning of the statute, and in a literal sense perhaps such an act might be said to have "commenced" (and ended) on the day of its perpetration. This is the construction for which plaintiff argues. Defendant contends that an infringing sale of cassettes in 1985, after the registration date, is not a new infringement but a continuation of "infringement" that "commenced" prior to registration. No published opinion in this circuit appears to have addressed the issue.

■ The word "infringement" can be used in two senses. As noted, it can mean both a single act of infringement, and it can also mean several or continuous or repeated acts of infringement. However, it would be peculiar if not inaccurate to use the word "commenced" to describe a single

act. That verb generally presupposes as a subject some kind of activity that begins at one time and continues or reoccurs thereafter.

The legislative history of section 412 supports the construction that the ordinary meaning of the statutory words suggests. Congress' evident purpose was to induce those owning copyrightable works to register them promptly. The following excerpt from the House Report on the 1976 Copyrights Act, 90 Stat. 2541 (1976), explains the objective of the section.

Section 412. Registration as Prerequisite to Certain Remedies

The need for section 412 arises from two basic changes the bill will make in the present law.

(1) Copyright registration for published works, which is useful and important to users and the public at large, would no longer be compulsory, and should therefore be induced in some practical way.

(2) The great body of unpublished works now protected at common law would automatically be brought under copyright and given statutory protection. The remedies for infringement presently available at common law should continue to apply to these works under the statute, but they should not be given special statutory remedies unless the owner has, by registration, made a public record of his copyright claim.

Under the general scheme of the bill, a copyright owner whose work has been infringed before registration would be entitled to the remedies ordinarily available in infringement cases: an injunction on terms the court considers fair, and his actual damages plus any applicable profits not used as a measure of damages. However, section 412 would deny any award of the special or "extraordinary" remedies of statutory damages or attorney's fees where infringement of copyright in an unpublished work began before registration or where, in the case of a published work, infringement commenced after publication and before reg-

**536**

istration (unless registration has been made within a grace period of three months after publication). These provisions would be applicable to works of foreign and domestic origin alike.

In providing that statutory damages and attorney's fees are not recoverable for infringement of unpublished, unregistered works, clause (1) of section 412 in no way narrows the remedies available under the present law. With respect to published works, clause (2) would generally deny an award of those two special remedies where infringement takes place before registration. As an exception, however, the clause provides a grace period of three months after publication during which registration can be made without loss of remedies: full remedies could be recovered for any infringement begun during the three months after publication if registration is made before that period has ended. This exception is needed to take care of newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim.

H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 158, *reprinted in* 1976 U.S. Code Cong. & Admin.News, 5659, 5774.

Since under the new legislation copyright registration would no longer be compulsory, Congress, deeming registration useful and important, sought some practical means of inducing it. The means chosen was to deny the "extraordinary" remedies of statutory damages and attorney's fees where registration is not promptly made. The threat of such a denial would hardly provide a significant motivation to register early if the owner of the work could obtain those remedies for acts of infringement taking place after a belated registration.

■ Considering both the wording of the section and its legislative history, the court holds that the manufacture and sale in 1983 of the works in this case "commenced" an "infringement" within the meaning of section 412, and that, since plaintiffs did not register the works until July 1984, they may not recover statutory damages or attorney's fees.

This holding is in accord with the decisions in *Evans Newton Inc. v. Chicago Systems Software*, 793 F.2d 889, 896–97 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 434, 93 L.Ed.2d 383 (1986); *Whelan Associates, Inc. v. Jaslow Dental Laboratory*, 609 F.Supp. 1325, 1330–31 (E.D.Pa. 1985), *aff'd on other grounds*, 797 F.2d 1222 (3rd Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987); and *Johnson v. University of Virginia*, 606 F.Supp. 321, 324–25 (D.Va.1985).

Plaintiffs are entitled to recover ordinary damages with respect to 1800 cassettes plus the costs of the action.

The foregoing constitutes the court's findings of fact and conclusions of law.

Submit judgment. So ordered.