**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEREK ANDREW, INC.,
                *Plaintiff-Appellee,*

v.

POOF APPAREL CORPORATION,
                *Defendant-Appellant.*

No. 07-35048

D.C. No.
CV-05-01136-JPD

OPINION

Appeal from the United States District Court
for the Western District of Washington
James P. Donohue, Magistrate Judge, Presiding

Argued and Submitted
May 8, 2008—Seattle, Washington

Filed June 11, 2008

Before: Susan P. Graber and Johnnie B. Rawlinson,
Circuit Judges, and Otis D. Wright II,* District Judge.

Opinion by Judge Wright

---

*The Honorable Otis D. Wright II, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

Neil A. Smith and Robert J. Stumpf, Jr., Sheppard, Mullin, Richter & Hampton LLP, San Francisco, California, for the defendant-appellant.

Lacy H. Koonce III, Davis Wright Tremaine LLP, New York, New York, for the plaintiff-appellee.

**OPINION**

WRIGHT, District Judge:

Poof Apparel Corporation ("Poof") appeals the district court's award to Derek Andrew, Inc. ("Andrew") of $15,000 in statutory damages under the Copyright Act, along with $296,090.50 in attorneys' fees.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and for the following reasons, REVERSE and REMAND.

**BACKGROUND**

**A. THE PARTIES AND PROPERTY RIGHTS AT ISSUE**

Andrew and Poof are corporations engaged in the apparel

---

[1]Poof also challenges other rulings by the district court; we reject those arguments in a memorandum disposition filed this date.

business. Of primary importance to this appeal is Andrew's "Twisted Heart" clothing line—a line of casual sportswear for women aged 14-70. Consumers can find this line at high-end department stores such as Nordstrom, Saks Fifth Avenue, and Neiman Marcus. The average price of Twisted Heart clothing is approximately $100.

Andrew's Twisted Heart line is identified by its label and, in particular, its "hang-tag" featuring its "Heart Design" and "Twisted Heart" trademarks.[2] Developed and first used in 2003, the Twisted Heart hang-tag hangs from the garment by a small, satin ribbon. The tag, including its configuration and the artwork in the label, was registered with the U.S. Copyright Office on June 15, 2005.

Poof sells women's clothing to retail stores and other customers throughout the United States. Most of its clothes are manufactured abroad and are shipped throughout the United States to lower-end retail stores such as T.J. Maxx, The Wet Seal, and Marshall's. Affixed to certain clothing sold by Poof are hang-tags nearly identical to Andrew's "Twisted Heart" hang-tags, the only difference being the word "Poof!" in place of the words "Twisted Heart."

## B.   THE DISPUTE AND THE PROCEEDINGS BELOW

On May 9, 2005, a garment bearing Poof's infringing hang-tag came into Andrew's possession, prompting Andrew's counsel to send a cease and desist letter to Poof on May 17, 2005. From there, the parties engaged in a letter-writing campaign, whereby Poof twice indicated its intent to comply with Andrew's demands. Poof, however, failed to remove the gar-

---

[2]Andrew's "Heart Design" mark was first used in commerce on August 11, 2003, and is the subject of U.S. Trademark Registration No. 3202995, filed on April 6, 2005. The "Twisted Heart" word mark has been used in commerce since August 11, 2003, and is the subject of U.S. Trademark Registration No. 2930606, filed July 14, 2003.

ments bearing the infringing hang-tag from stores. Andrew filed a complaint for copyright and trademark infringement, in addition to state law claims, in the U.S. District Court for the Western District of Washington.

Despite being represented by counsel, Poof failed to respond to Andrew's complaint and, on August 8, 2005, default was entered. Regretting that the matter had "progressed to this point," on November 17, 2005, Poof's counsel sent a letter to Andrew expressing Poof's interest in arriving at a settlement. Andrew's counsel was receptive to entertaining settlement discussions, but not before Poof entered an appearance in the matter. Obligingly, Poof entered its appearance on February 6, 2006, and on March 23, 2006, filed a motion to set aside the entry of default.

On April 14, 2006, Magistrate Judge James Donohue issued his Report and Recommendation denying Poof's motion to set aside entry of default because Poof failed to establish "good cause" for doing so. Poof objected to Judge Donohue's Report and argued that default was not warranted. On June 19, 2006, after considering Judge Donohue's Report, Poof's objections, and Andrew's response thereto, the Honorable Thomas Zilly adopted Judge Donohue's conclusions and denied Poof's motion to set aside entry of default.

On December 4, 2006, a bench trial commenced on the issue of damages. On the Lanham Act and Washington state law claims, Judge Donohue found that disgorgement of profits was the appropriate measure of damages and awarded Andrew $685,307.70. The court found that Poof distributed 189,108 garments containing the infringing hang-tag, representing a total gross revenue of $1,028,848.10. From this, the court deducted $343,540.40 in costs and disgorged Poof of its profits in the sum of $685,307.70.

As to its copyright claim, Andrew was awarded $15,000 in statutory damages. Poof was also permanently enjoined from

further infringing upon Andrew's trademarks and—because the trial court was of the opinion that this was an exceptional case—Andrew was awarded attorneys' fees in the amount of $296,090.50, and $6,678.60 in costs. Poof timely appealed.

## DISCUSSION

### A. THE DISTRICT COURT ERRED IN AWARDING ANDREW $15,000 IN STATUTORY DAMAGES UNDER THE COPYRIGHT ACT.

Under 17 U.S.C. § 504(a) and (c), a copyright owner may elect to recover statutory damages instead of actual damages and any additional profits. Ordinarily, we review an award of statutory damages for abuse of discretion. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 520 (9th Cir. 1985).

[1] Title 17 U.S.C. § 412(2) leaves no room for discretion, however. Section 412(2) mandates that, in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work. *See id.* (precluding an award of attorneys' fees as well);[3] *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 n.5 (9th Cir. 2004).

Here, the district court awarded Andrew $15,000 in statutory damages because Poof distributed garments bearing the infringing hang-tag after June 15, 2005, the copyright's registration date. Thus, as a matter of law, the court must have determined that § 412 does not preclude an award of statutory

---

[3]Title 17 U.S.C. § 412(2) provides that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

damages because these post-June 15, 2005, shipments were separate and distinct infringements from the pre-registration infringement. We review *de novo* the court's legal conclusion that the post-June 15, 2005, infringements did not "commence" before the copyright was registered. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007).

**[2]** In this case, it is undisputed that Andrew's hang-tag was first published on August 11, 2003, and that its copyright registration became effective on June 15, 2005. It is also undisputed that the initial act of infringement occurred on May 9, 2005, when Andrew first came into possession of a Poof garment bearing an infringing hang-tag. Thus, Andrew's copyright in its Twisted Heart hang-tag was registered more than three months *after* its first publication, and Poof's infringement first occurred *before* the effective date of registration.

Citing this sequence of events, Poof argues that Andrew is precluded from recovering statutory damages under § 412 because any subsequent, post-registration distributions of garments bearing the infringing hang-tag are continuous and ongoing acts of the initial infringement. Andrew, on the other hand, contends that these post-registration distributions constitute new infringements under the Copyright Act, thereby justifying the court's award of statutory damages.

**[3]** Until now, we have not expressly addressed the issue presented; namely, whether § 412 bars an award of statutory damages for post-registration infringements when the initial act of infringement occurred prior to the effective copyright registration date. Resolution of this issue necessarily depends upon our interpretation of the term "commenced" as it is used in § 412. In that regard, we examine the text of § 412 and consider the purposes behind its enactment.

**[4]** With respect to the text, we are guided by the courts that have interpreted § 412 in similar factual contexts. As one court has concluded, while

[e]ach separate act of infringement is, of course, an "infringement" within the meaning of the statute, and in a literal sense perhaps such an act might be said to have "commenced " (and ended) on the day of its perpetration[,] . . . it would be peculiar if not inaccurate to use the word "commenced " to describe a single act. That verb generally presupposes as a subject some kind of activity that begins at one time and continues or reoccurs thereafter.

*Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 535 (E.D.N.Y. 1988); *accord Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1394 (C.D. Cal. 1993) (quoting *Singh*, 680 F. Supp. at 535); *Mason v. Montgomery Data, Inc.*, 741 F. Supp. 1282, 1286 (S.D. Tex. 1990) ("The plain language of the statute does not reveal that Congress intended to distinguish between pre- and post-registration infringements."). We discern no reason to depart from such a reading.

**[5]** We also recognize that § 412 is designed to implement two fundamental purposes. First, by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly. *See* H.R. Rep. No. 94-1476, at 158 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5774 ("Copyright registration . . . is useful and important to users and the public at large . . . and should therefore be induced in some practical way."). Second, § 412 encourages potential infringers to check the Copyright Office's database. *See Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998). To allow statutory damages and attorneys' fees where an infringing act occurs before registration and then reoccurs thereafter clearly would defeat the dual incentives of § 412. *See Johnson*, 149 F.3d at 505 ("These purposes would be thwarted by holding that infringement is 'commenced' for the purposes of § 412 each time an

infringer commits another in an ongoing series of infringing acts.").

Every court to consider the issue has held that "infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs." *Johnson*, 149 F.3d at 506; *accord Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 609 F. Supp. 1325, 1331 (E.D. Pa. 1985) ("Interpreting 'commencement of infringement' as the time when the first act of infringement in a series of on-going discrete infringements occurs . . . would best promote the early registration of a copyright."). Indeed, if the incentive structure of § 412 is to be properly applied, Andrew, having waited nearly two years from the date of first publication to register its copyright, should not receive the reward of statutory damages. *See Johnson*, 149 F.3d at 505-06.

**[6]** Accordingly, we join those circuits that addressed the issue before us[4] and hold that *the first act of infringement* in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412. This interpretation, we believe, furthers Congress' intent to promote the early registration of copyrights.

**[7]** Given our interpretation of § 412, we must now determine whether Poof's post-registration distributions were an ongoing continuation of its initial pre-registration infringement. In this case, there is no legally significant difference between Poof's pre- and post-registration infringement. Poof first distributed garments bearing the infringing hang-tag on May 9, 2005, if not earlier, and continued to do so—albeit with the hang-tag attached to different garments—after the

---

[4]*See Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 330 (4th Cir. 2007), *cert. denied*, 2008 WL 436937 (U.S. Apr. 21, 2008) (No. 07-1053); *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007); *Johnson*, 149 F.3d at 506*; Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 142-44 (5th Cir. 1992).

June 15, 2005, copyright registration. Thus, Poof began its infringing activity before the effective registration date, and it repeated the same act after that date each time it used the same copyrighted material.

[8] The mere fact that the hang-tag was attached to new garments made and distributed after June 15 does not transform those distributions into many separate and distinct infringements. *See e.g. Mason*, 967 F.2d at 144 (concluding that a plaintiff may not recover statutory damages for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996) (rejecting argument that each sale of an infringing ticket was a separate act of infringement that commenced after the copyright's registration date)*; Parfums Givenchy*, 832 F. Supp. at 1393-95 (rejecting argument that, because the defendant had imported and distributed the infringing product on several distinct occasions, each act of importing the product constituted a separate and distinct act of infringement); *Johnson v. Univ. of Va.*, 606 F. Supp. 321, 325 (W.D. Va. 1985) (rejecting argument that each time a photograph was copied, a separate copyright infringement was commenced). Poof simply engaged in an ongoing series of infringements that commenced with the first distribution in May 2005. Therefore, Andrew is not entitled to statutory damages under the Copyright Act, and the court's award of $15,000 is REVERSED.

**B.   THE DISTRICT COURT MAY HAVE ERRED IN AWARDING ANDREW $296,090.50 IN ATTORNEYS' FEES.**

[9] Poof also challenges the district court's award of attorneys' fees. First, Poof argues that, in addition to precluding recovery of statutory damages, Andrew's failure to timely register its copyrights precludes it from recovering attorneys' fees. As noted above, 17 U.S.C. § 412(2) of the Copyright Act precludes an award of attorneys' fees if the copyrighted work

is not registered prior to the commencement of the infringement, unless the registration is made within three months after the first publication of the work. Because infringement commenced prior to the June 15, 2005, registration date, Andrew is not entitled to its attorneys' fees to the extent that they are based upon a violation of the Copyright Act.

**[10]** Second, Poof challenges the propriety of attorneys' fees under the Lanham Act. An award of reasonable attorneys' fees and costs is expressly provided for in "exceptional cases" of trademark infringement. *See* 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002*)*.

Poof argues that, "while the Magistrate Judge acknowledged Poof Apparel's default occurred in a complaint that pled wilfulness, the court made no specific finding that the infringement . . . was 'malicious, fraudulent, deliberate or willful.' " Not only is this argument factually inaccurate—the district court determined that Poof wilfully infringed Andrew's trademarks—but, more importantly, it is expressly foreclosed by our holding in *Rio Properties, Inc.*

**[11]** In *Rio Properties, Inc.*, we upheld an award of attorneys' fees under the Lanham Act solely because, "by entry of default judgment, the district court determined, as alleged in RIO's complaint, that RII's acts were committed knowingly, maliciously, and oppressively, and with an intent to . . . injure RIO." 284 F.3d at 1023 (alteration in original) (internal quotation marks omitted); *see also TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (internal quotation marks omitted)). The case before us is indistinguishable.

**[12]** The district court entered default and Poof concedes that its default occurred with respect to a complaint that pled wilfulness. Thus, all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks. This default sufficiently establishes Andrew's entitlement to attorneys' fees under the Lanham Act. Because Poof does not contest the amount of fees, the district court's award of fees under the Lanham Act is affirmed.

**[13]** Nevertheless, REMAND is proper because it is unclear whether the district court's award of fees may have included fees related to Andrew's Copyright Act claim. On remand, the district court must recalculate the fees award taking into account that Poof prevails as a matter of law on Andrew's Copyright Act claim.

## CONCLUSION

The district court's award of $15,000 in statutory damages under the Copyright Act is REVERSED because the infringing activity commenced before the effective registration date of the copyright at issue. In addition, while the district court's award of attorneys' fees under the Lanham Act is proper, any award of attorneys' fees under the Copyright Act is improper for the same reason Andrew was not entitled to statutory damages under the Copyright Act. On the record before us, however, we are unable to determine whether any portion of attorneys' fees award was based on the Copyright Act. Thus, we REMAND with instructions to apportion the fees award in light of our determination that Andrew is not entitled to attorneys' fees under the Copyright Act.

Statutory damages under the Copyright Act REVERSED; attorney fees REMANDED with instructions. The parties shall bear their own costs on appeal.