**MOROCCANOIL, INC., Plaintiff,**

v.

**ALLSTATE BEAUTY PRODUCTS, INC., et al., Defendant.**

**Case No. CV 11–02125 DMG (AGRx).**

United States District Court,
C.D. California.

March 2, 2012.

Courtney M. Ryan, Jonathan Medrano, Mark Riedel, William Christian Conkle, Conkle Kremer and Engel, Santa Monica, CA, for Plaintiff.

**ORDER RE: PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ALEXANDER BEDEROFF [DOC. # 21]**

DOLLY M. GEE, District Judge.

This matter is before the Court on Plaintiff Moroccanoil, Inc.'s January 31,

2012 motion for entry of default judgment and permanent judgment. [Doc. # 21]. Moroccanoil seeks entry of default judgment only as to Defendant Alexander Bederoff. Moroccanoil filed notice of dismissal as to defendant Allstate Beauty Products, Inc. on April 14, 2011 [Doc. # 9] and as to defendant Delacqua Salon, Inc. on January 31, 2012 [Doc. # 22]. The Court held a hearing on March 2, 2012. Courtney M. Ryan, Esq. appeared on behalf of Moroccanoil. No appearance was made on behalf of Defendant Bederoff. For the reasons set forth below, Moroccanoil's Motion is GRANTED.

## I.

### LEGAL STANDARDS GOVERNING MOTIONS FOR DEFAULT JUDGMENT

■ Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment and, if necessary to effectuate judgment, the court may conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Default judgments are usually disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir.1986).

In *Eitel*, the Ninth Circuit set forth a number of factors that courts may consider when evaluating a default judgment application: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1472–73 (citing 6 Moore's Federal Practice ¶ 55–05[2] ).

■ In evaluating a motion for default judgment, a court deems the complaint's factual allegations, other than those relating to the amount of damages, to be true. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir.2008).

## II.

### DISCUSSION

### A. *Moroccanoil Has Complied with Local Rule 55–1*

Moroccanoil has met the procedural requirements for default judgment. It obtained an entry of default against Bederoff on the first amended complaint [Doc. # 19] in compliance with Federal Rule of Civil Procedure 55(a). Although Moroccanoil is not required to serve Bederoff with its application for default judgment because Bederoff has not appeared in this action, *see* Fed.R.Civ.P. 55(b)(2), it provided Bederoff with a copy of the application. (Ryan Decl. ¶ 12.)

Local Rule 55–1 requires the party seeking default judgment to submit a declaration stating (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. app. § 501 *et seq.*, does not apply; and (5) that notice has been served, if required, on the defaulting party. Moroccanoil has complied with the applicable provisions of Local Rule 55–1. (*See* Ryan Decl. ¶¶ 2–6, 12.)

### B. Eitel *Factors*

The Court considers each of the *Eitel* factors in series.

### 1. *Possibility Of Prejudice To Plaintiff*

■ Moroccanoil will generally be prejudiced if a court declines to grant default

judgment where, as here, it lacks other recourse to recover damages for its injury or means to prevent Bederoff from causing it further harm. *See, e.g., IO Grp., Inc. v. Jordon,* 708 F.Supp.2d 989, 997 (N.D.Cal. 2010); *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1054–55 (N.D.Cal.2010). Therefore, the prejudice to Moroccanoil favors default judgment.

## 2. Merits Of Plaintiffs Substantive Claim And Sufficiency Of The Complaint

■ Moroccanoil alleges four causes of action: (1) trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114; (2) false designation of origin and false representation in violation of 15 U.S.C. § 1125(a); (3) unfair business practices in violation of Cal. Bus. & Prof.Code § 17200; and (4) common law unfair competition and conspiracy to unfairly compete. At the crux of all the claims is Moroccanoil's allegation that Bederoff infringed on the Trademarks by developing and manufacturing counterfeit products that bear the Trademarks and by offering for sale and selling, transporting, and distributing the counterfeit products.

■ All of Moroccanoil's infringement claims are subject to the same test.[1] "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product."[2] *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jardine,* 318 F.3d 900, 908 (9th Cir.2003)) (internal quotation marks omitted).

Moroccanoil is the owner of the federally registered trademarks at issue, including the word "MOROCCANOIL" (U.S. Reg. No. 3,478,807), the vertical "M Moroccanoil Design" (U.S. Reg. No. 3,684,910), and the horizontal "M Moroccanoil Design" (U.S. Reg. No. 3,684,909) (together, the "Trademarks"). (1st Am. Compl. ¶¶ 19–20.) Moroccanoil owns all of the right, title and interest in the United States in the Trademarks and the goodwill associated with them. (*Id.*) Moroccanoil continuously used one or more of the Trademarks in commerce in the United States. (*Id.* ¶ 21.) The Trademarks are also inherently distinctive and have acquired secondary meaning in the marketplace. (*Id.*)

1. Moroccanoil's state law claims under Cal. Bus. & Prof.Code § 17200 and for common law unfair competition are "substantially congruent to claims made under the Lanham Act," *M2 Software, Inc. v. Madacy Entm't,* 421 F.3d 1073, 1089–90 (9th Cir.2005) (quoting *Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.1994) (internal quotation marks omitted)), and thus also "require a showing of likelihood of confusion," *id.* at 1090 (construing *Walter v. Mattel, Inc.,* 210 F.3d 1108, 1111 (9th Cir.2000)).

2. In *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979), the Ninth Circuit identified eight non-exhaustive factors (the *Sleekcraft* factors) that are relevant for determining whether consumers would likely be confused by related goods: (1) the mark's strength; (2) the proximity of the goods; (3) the similarity between the plaintiff's and the defendant's marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1144–45 (9th Cir.2011). In the present context,

> the most relevant factors to the analysis of the likelihood of confusion are: (1) the strength of the mark; (2) the evidence of actual confusion; (3) the type of goods and degree of care likely to be exercised by the purchaser; and (4) the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page.

*Id.* at 1154.

Bederoff used the Trademarks in the distribution and sale of counterfeit products, which were intended to deceive and confuse consumers. (*Id.* ¶¶ 25–28.) Indeed, on or around February 23, 2009, two bottles of "Moroccanoil Oil Treatment" were purchased from Bederoff's website, www.allstatebeauty.com. (Kathol Decl. ¶¶ 2–5.) Although the bottles appear outwardly identical to the genuine products, the bottles contained counterfeit product inside. (1st Am. Compl. ¶¶ 25, 27.) Moroccanoil did not consent to Bederoff's use of the Trademarks. (*Id.* ¶ 32.)

As the complaint appears both sufficiently pled and meritorious, these factors favor default judgment.

### 3. *Sum Of Money At Stake*

■■■ This *Eitel* factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.,* 725 F.Supp.2d 916, 921 (C.D.Cal.2010); *See Eitel,* 782 F.2d at 1471–72. While the allegations in a complaint are taken to be true for the purposes of default judgment, courts must make specific findings of fact in assessing damages. *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002).

■■■ In addition to injunctive relief pursuant to 15 U.S.C. § 1116(a), Moroccanoil seeks statutory damages pursuant to 15 U.S.C. § 1117(c). Pursuant to 15 U.S.C. § 1117(c), the Court may award statutory damages in an amount of up to $200,000 per counterfeit mark or up to $2,000,000 per counterfeit mark if the use of the mark was willful.[3] *See* 15 U.S.C. § 1117(c). The Court has discretion to determine the amount of such damages to be awarded. *Rolex Watch, U.S.A., Inc. v. Michel Co.,* 179 F.3d 704, 712 (9th Cir. 1999). Moroccanoil asserts that each of the three Trademarks were infringed and seeks a total amount of $60,000, calculated at $20,000 per counterfeit mark. The amount of money that Moroccanoil seeks is consistent with the allegations in the first amended complaint.[4] The Court finds that the sum of money at stake weighs in favor of default judgment.

### 4. *Possibility Of A Dispute As To Material Facts*

■■■ The possibility of a dispute as to material facts is remote because Bederoff has not defended himself herein and there is no indication that he intends to do so. Therefore, this factor favors entry of default judgment.

---

**3.** Section 1117 provides:

In a case involving the use of a counterfeit mark ... in conjunction with the sale, offering for sale, distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117.

**4.** In the first amended complaint, Moroccanoil seeks damages and remedies provided by 15 U.S.C. §§ 1116, 1117, and 1125, 19 U.S.C. § 1526, damages according to proof and for all gains, profits, or advantages derived by unfair competition in an amount not less than $1,000,000, punitive and exemplary damages, attorney's fees, and costs. (1st Am. Compl. at 19–22.)

#### 5. *Excusable Neglect*

■ There is no evidence that Bederoff has failed to defend against this lawsuit due to excusable neglect. Moroccanoil served Bederoff on June 15, 2011 [Doc. # 11]. Moroccanoil also provided Bederoff with a copy of this application and, as of the date of this Order, Bederoff has not appeared in this action. This factor favors default judgment.

#### 6. *Policy Favoring Decisions On The Merits*

■ "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Although default judgment is disfavored, a decision on the merits is impractical, if not impossible, when the defendant takes no part in the action. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083, 1093 (N.D.Cal.2008). This factor thus weighs weakly against default judgment.

Balancing the *Eitel* factors, the Court finds that they weigh almost uniformly in favor of default judgment.

### C. *Remedies*

#### 1. *Statutory Damages*

■ As discussed *supra*, the Court has discretion to determine the amount of statutory damages to be awarded pursuant to 15 U.S.C. § 1117(c). Moroccanoil requests $20,000 per counterfeit mark. Section 1117(c) permits an award in an amount up to $200,000 per counterfeit mark or up to $2,000,000 per counterfeit mark if the use of the mark was willful. The Court finds that an award of $60,000, or $20,000 per counterfeit mark, is a conservative award and appropriate under the circumstances in this case.

#### 2. *Injunctive Relief*

■ Moroccanoil seeks injunctive relief pursuant to 15 U.S.C. § 1116(a). The Lanham Act gives the Court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under [the Lanham Act]." 15 U.S.C. § 1116(a); *see also Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D.Cal.2003).

Moroccanoil requests that the Court issue a permanent injunction against Bederoff and his representative officers, agents, servants, employees, and attorneys, and all persons acting in concert and participation with him to prohibit them from:

a. Marketing, advertising, acquiring, transporting, distributing, offering to sell or selling counterfeit products bearing any Moroccanoil Trademarks, including but not limited to sales via the website, www. Allstatebeauty.com, or any other website operated by, controlled by, or affiliated with Defendant (including without limitation eBay.com, Amazon.com, or any similar third party); [5]

b. Using any of Moroccanoil's Trademarks in a manner prohibited by law or regulation;

c. Otherwise infringing any Moroccanoil Trademark or any other intellectual property of Moroccanoil;

d. Causing likelihood of confusion, deception, or mistake as to the source,

---

5. Moroccanoil's counsel concedes that in preparation of its application, she visited the website www.allstatebeauty.com, from which the two counterfeit bottles of MoroccanOil— Oil Treatment Serum" were purchased (Ka-

thol Decl. ¶ 3), and that the website was no longer active (Ryan Decl. ¶ 11). Moroccanoil does not indicate, however, whether the website has been permanently deactivated.

nature, or quality of the goods of the Defendant;

e. Using any false designation of origin or false representation concerning Moroccanoil products;

f. Misrepresenting to anyone that Defendant is an authorized Moroccanoil manufacturer or distributor;

g. Misrepresenting to anyone that Defendant carries, distributes or sells genuine Moroccanoil products or that they obtain their products directly from Moroccanoil;

h. Any acts of unfair competition or unfair practice involving or affecting Moroccanoil or any Moroccanoil product; and

i. Soliciting, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs "a" through "h."

The Court finds that the proposed injunctive relief is appropriate and necessary to prevent continuing irreparable harm to Moroccanoil.

### 3. *Seizure of Counterfeit Goods*

Moroccanoil asks for a seizure of all counterfeits of Moroccanoil goods and marks, as well as an order requiring Bederoff to deliver to Plaintiff:

a. all products, literature, and other material bearing any counterfeits of the Moroccanoil Trademarks or other infringement of the intellectual property of Moroccanoil or which falsely identify Moroccanoil as the source of the products they develop, manufacture, market, advertise, transport, distribute and sell as Moroccanoil products; and

b. printing devices, labels, packing, bottles, advertising or any other items listed in 15 U.S.C. § 1118 or otherwise used in the manufacture,

publicity, advertising or sale of products bearing any counterfeits of the Moroccanoil Trademarks.

The Lanham Act permits a Court, "upon ex parte application" to grant an order providing for the seizure of goods and counterfeit marks involved in the violation of the Lanham Act. 15 U.S.C. § 1116(d)(1)(A). Section 1116(d) provides, however, that the Court shall *not* grant an application unless "the person obtaining an order under this subsection provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection" and unless the Court makes certain findings listed in section 1116(d), including *inter alia*, that an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114. *See* 15 U.S.C. § 1116(d)(4).

Insofar as Moroccanoil has not satisfied the requirements under 15 U.S.C. § 1116(d), the Court denies its request for seizure of all counterfeit products.

### 4. *Attorneys' Fees*

 Moroccanoil seeks attorneys' fees in the amount of $4,000. Section 1117(a) provides the Court with discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "A trademark infringement is viewed as exceptional under § 1117(a) when the infringement is malicious, fraudulent, deliberate or willful." *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir.1999) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) (internal quotation marks omitted)). A defendant's failure to defend is one factor that courts consider in determining whether the defendant's conduct was willful. *See, e.g., Craigslist, Inc. v. Nature-*

*market, Inc.,* 694 F.Supp.2d 1039, 1060 (N.D.Cal.2010) (noting that where a defendant has engaged in willful infringement and has refused to respond to the allegations brought against it, damages in the magnitude of millions of dollars have been deemed appropriate) (citing *Philip Morris U.S.A., Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 500 (C.D.Cal.2003)).

In this case, it appears that Bederoff's copying was deliberate and willful. The counterfeit products were packaged in bottles with nearly identical trade dress as that of the genuine products, including the size, shape, color, wording, and overall appearance of the products. (1st Am. Compl. ¶¶ 25, 36.) Moreover, Bederoff failed to defend this action. The Court therefore finds that reasonable attorneys' fees are appropriate in this case. Pursuant to Local Rule 55–3, Moroccanoil is entitled to attorneys' fees in the amount of $4,000 (*i.e.,* the amount of $3600 plus 4% of amount over $50,000). C.D. Cal. L.R. 55–3.

### 5. Costs

Moroccanoil seeks costs in the amount of $194.50. Upon a finding of defendant's liability for a violation of the Lanham Act, 15 U.S.C. § 1117(a) also permits the Court to award costs of the action. *See* 15 U.S.C. § 1117(a). Thus, the Court grants Moroccanoil's request for an award of costs.

## III.

### CONCLUSION

In light of the foregoing, Moroccanoil's application for default judgment is **GRANTED** as follows:

1. Judgment shall be entered in favor of Moroccanoil and against Defendant Bederoff in the amount of $60,000 in statutory damages pursuant to 15 U.S.C. § 1117 and prejudgment interest from the date the ac-

tion was filed at the rate of ten percent;

2. Moroccanoil shall be entitled to attorneys' fees in the amount of $4,000 and costs in the amount of $194.50;

3. Moroccanoil shall be entitled to injunctive relief as set forth in section IV(b), *supra;* and

4. Bederoff shall be required to file with the Court and serve on Moroccanoil, within 30 days after service of this Order on Bederoff, a report in writing and under oath setting forth in detail the manner and form in which Bederoff has complied with the injunction.

Moroccanoil shall submit a proposed judgment in Word format consistent with this Order.

**IT IS SO ORDERED.**