**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2020

Lyle W. Cayce
Clerk

No. 18-31160

SOUTHERN CREDENTIALING SUPPORT SERVICES, L.L.C.,

Plaintiff – Appellee Cross-Appellant

v.

HAMMOND SURGICAL HOSPITAL, L.L.C., doing business as Cypress Pointe Surgical Hospital; HAMMOND SURGICAL HOSPITAL MANAGEMENT COMPANY, L.L.C.,

Defendants – Appellants Cross-Appellees

Appeals from the United States District Court
for the Eastern District of Louisiana

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

A plaintiff must usually prove damages to recover in a lawsuit. But to encourage compliance, some laws provide automatic damages. The Copyright Act of 1976 is an example. It has a provision allowing a copyright holder to elect statutory damages—in an amount the court sets between $750 and $30,000 per infringed work, rising to a possibility of $150,000 per work for willful infringement—instead of actual damages. *See* 17 U.S.C. § 504.

Statutory damages are not available, however, in all copyright cases. A plaintiff cannot recover statutory damages, and sometimes more importantly, attorney's fees, for "any infringement" a defendant commences before the plaintiff registered the copyright. 17 U.S.C. § 412. That limitation encourages

authors to register their works quickly, allowing potential infringers to readily determine whether a work is protected. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992).

We have interpreted section 412 to bar statutory damages even for a defendant's postregistration copying of a plaintiff's map if copying also occurred before registration. *Id.* The question this case poses is whether that bar also applies when the defendant engages in a different type of infringement after registration. For example, what if a defendant distributes the work after registration rather than continuing with the earlier copying?

## I.

In 2010, Southern Credentialing Support Services began providing health care credentialing services to Hammond Surgical Hospital. Credentialing is a process doctors must complete to practice at hospitals. Doctors submit basic application forms, which are common across facilities, as well as delineation of privileges forms, which differ for each institution to reflect hospital policies as well as state and federal regulations. Credentialing service providers verify the information doctors provide.

Some companies, like Southern Credentialing, try to obtain a competitive advantage by designing custom forms for their clients. Southern Credentialing created two packets of forms for Hammond: an initial credentialing application packet and a recredentialing packet. The initial packet was 83 pages long, which included 8 base documents common to all credentialing applications, several forms required by law, and 33 specialty-specific delineations. The recredentialing packet was 113 pages long, consisting of an original reapplication packet, the 8 base documents, and the 33 specialty-specific delineations.

In 2013, Southern Credentialing stopped providing credentialing services to Hammond. Hammond soon contracted with another company for

credentialing services.  The forms that the new provider used contained fifty pages that were identical to Southern Credentialing's forms.  From 2013 until 2017, doctors would register on the new provider's website and access the application through a password-protected portal.  By 2017, the new provider had posted the documents in a way that enabled anyone who knew where to look for the forms on its website to access them without a password.

When it was working with Hammond, Southern Credentialing had not registered any copyrights in its application packets.  On learning that Hammond was still using its forms after the companies had parted ways, Southern Credentialing registered a copyright for the original packet in February 2014 and the recredentialing packet in July 2014.

A few days after registering the second copyright, Southern Credentialing sent an email to Hammond asserting that Hammond's ongoing use of the credentialing forms infringed Southern Credentialing's copyrights. Hammond responded that the forms were not eligible for copyright protection and asked Southern Credentialing to identify which documents it believed were protected.  Additional exchanges between the parties did not resolve the dispute.

So Southern Credentialing filed this suit.  It claimed that Hammond infringed its copyrights over the initial and reapplication packets.  Southern Credentialing sought summary judgment, which the district court granted as to the existence of the copyrights and infringement.

To determine damages, the district court held a bench trial.  During the trial, Southern Credentialing elected statutory damages.  The court held that it could award statutory damages despite section 412's bar because the defendant's post-2017 internet distribution of the packets was "different in kind" from its pre-2017 infringing activity. After determining that Hammond's infringement was not willful, it awarded Southern Credentialing $5,000

No. 18-31160

($2,500 for each packet).  The court also ruled that Southern Credentialing was entitled to attorney's fees and costs, though it has not yet determined the amount.  Finally, the court issued a permanent injunction barring Hammond from infringing Southern Credentialing's copyrights.

Hammond appeals, arguing that 17 U.S.C. § 412 bars awarding statutory damages and attorney's fees because Hammond began infringing before Southern Credentialing registered its copyrights.  Hammond also appeals both grants of summary judgment, arguing that Southern Credentialing's forms lack originality and that, in any event, it did not copy those forms.  Southern Credentialing also appeals, arguing that Hammond's infringement was willful.  Willfulness only matters if any award of statutory damages is permissible.

II.

We first address whether Southern Credentialing possessed valid copyrights in its credentialing packets.  Copyright protection "subsists . . . in original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  Hammond challenges only the originality of the packets.

A work is original if it exhibits a minimal degree of creativity.  *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  Facts are not original, so they are not eligible for protection.  *Id.* at 345−46; 17 U.S.C. § 102(b).  Likewise, blank forms an author designs merely to record information are not eligible for copyright.  *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 n.11 (5th Cir. 1994).  But copyright does extend to the creative elements of compilations of facts and blank forms, including the selection and arrangement of information that enable effective use.  *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 409 (5th Cir. 1995).  The copyright in such works is necessarily thin and protects only the original elements of the form. *See Feist*, 499 U.S. at 349.

No. 18-31160

Southern Credentialing's forms meet the low bar for originality. Southern Credentialing selected and arranged information in an efficient way. Among other things, the forms eliminate unnecessary questions that appear on competitors' forms.     Indeed, Hammond admits that Southern Credentialing's forms enabled Southern Credentialing to process applications at a much faster than average rate.    Presumably the efficiency of Southern Credentialing's forms is why Hammond continued to use them with the new credentialing company, even after Southern Credentialing protested.

Although laws and hospital policies dictate the contents of the credentialing forms, Southern Credentialing's unique selection and arrangement of information exhibit creative expression.    That distinctive arrangement distinguishes the credentialing applications from the once-ubiquitous white pages that the Supreme Court held lacked originality because market forces required alphabetical phone directories.   *Feist*, 499 U.S. at 363–64.   In contrast to the uniform arrangement used in the phone directory business, competing health care credentialing servicers use forms that are compiled and arranged in different ways.   Such differentiation within the industry demonstrates originality.   *See Eng'g Dynamics, Inc.*, 26 F.3d at 1346 (holding that a computer program that simulated engineering problems was original because its algorithm differed from its competitors' algorithm that achieved the same output).

Southern Credentialing has valid copyrights protecting the selection and arrangement of information in its credentialing forms.

### III.

The next question is whether Hammond infringed those copyrights. Copying protected material is infringement.   17 U.S.C. §§ 106, 501.   A defendant unlawfully copies if it uses protected elements of a work and there is a substantial similarity between the protected work and the allegedly

5

infringing work. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Determining whether two works are substantially similar usually requires a side-by-side comparison to identify whether the protected elements and elements in the allegedly infringing work are so alike that a layperson would view the two works as substantially similar. *See id.* at 576–77. But such an element-by-element comparison is unnecessary when the allegedly infringing work extensively copies the protected material verbatim, such that protected elements of the original work are necessarily incorporated into the latter work. *Cf. Eng'g Dynamics,* 26 F.3d at 1348 (collecting cases noting that works with thin copyright nevertheless are infringed when copied verbatim).

Hammond copied Southern Credentialing's packets. Large portions of Hammond's new application are taken verbatim from Southern Credentialing's packets—approximately 50% of Southern Credentialing's materials are included in the new forms. Although the copyright in factual compilations is necessarily thin, wholesale duplication of half of a protected work necessarily incorporates its protected elements. *See Feist*, 499 U.S. at 348 ("Others may copy the underlying facts from the publication, but not the precise words used to present them.").

The district court correctly concluded that Hammond infringed valid copyrights of Southern Credentialing. We thus affirm the permanent injunction it entered barring future infringement.

IV.

That brings us to the novel issue this appeal poses: whether section 412 bars Southern Credentialing from recovering statutory damages. As mentioned at the outset, the Copyright Act prohibits the recovery of statutory damages and attorney's fees for "any infringement of copyright in an

No. 18-31160

unpublished work commenced before the effective date of its registration. . . ."[1] 17 U.S.C. 412(1).

Section 412's "any infringement" and "commenced" language is ambiguous as applied to multiple infringements of the same work over time. *Mason*, 967 F.2d at 143. Those words could be read to bar statutory damages for all future infringements of the work if the defendant began any infringement prior to registration. *Id.* In that case, any preregistration infringement of a book or song would bar statutory damages for any postregistration sales of those works. The other possibility is that the text only bars statutory damages for those infringements beginning before registration. *Id.* Under this reading, if a defendant began a new infringement after registration—by, for example, selling additional copies of the infringing song— the plaintiff could recover statutory damages even if the defendant's earlier sales of the song predated registration.

*Mason* resolved that ambiguity. We held that section 412(2) bars statutory damages when the same defendant infringed the same work in the same fashion before and after registration.[2] *Id.* at 143−44. The plaintiff had published 233 maps from 1967 to 1980, registering one map in 1968 and the remaining 232 in 1987. *Id.* at 144. The defendant copied each map repeatedly from 1982 to 1989. *Id.* at 137. We held the defendant could not be liable for statutory damages under section 412 except for its infringement of the single map that was registered in 1968 prior to any copying of that work. *Id.* at 144.

---

[1] Section 412 permits the recovery of statutory damages if the effective date of registration was within one month of when the copyright owner learned of the infringement. The grace period is inapplicable here.

[2] Sections 412(1) and (2) do not materially differ for our purposes. Section 412(1) addresses the availability of statutory damages for unpublished works, while section 412(2) addresses the availability of statutory damages for published works. Both subsections contain the "any infringement . . . commenced before the effective date of its registration" language.

No. 18-31160

For the other 232 maps, the preregistration infringement of those maps barred any statutory damages even for the additional infringements that postdated the 1987 registration.

In reaching that conclusion, we emphasized the need for the limit on statutory damages to be read consistently with the provision authorizing those damages in the first place. *Id.* at 143–44. That statute, section 504, authorizes "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable . . . ." 29 U.S.C. § 504(c)(1). The "an award" language means there is a single statutory award "for all infringements" of a single work. *Mason*, 967 F.2d at 144.

The single-award-per-infringed-work rule for statutory damages supports reading section 412 bar's on statutory damages broadly to prohibit statutory damages for both pre- and postregistration infringements. *Id.* at 143−44. That is because the narrow reading of section 412 would bar statutory damages for one infringement of a work (the infringement occurring preregistration) yet allow them for a different infringement of the same work (one occurring postregistration). That interpretation is at odds with section 504's rule that there be *an award* for all infringements of the same work. In other words, it would be incongruent to separate infringements of the same work when considering whether the section 412 bar applies when the provision allowing statutory damages requires treating those infringements together. *Id.* at 144. Siloing infringements when applying the bar on statutory damages would also allow a plaintiff to recover actual damages for preregistration infringements (when statutory damages are unavailable) and then statutory damages for later infringements of the same work. *Id.* That is also at odds with the statute's allowing a plaintiff to elect a single statutory award for each infringed work in lieu of—but not in addition to—actual damages. *Id.*

No. 18-31160

*Mason* also relied on the Copyright Act's purpose in limiting statutory damages when infringement occurs before registration: to encourage early registration, thus allowing potential infringers to determine whether a work is protected. Permitting a plaintiff to register, then collect statutory damages for new infringements of the same work by the same defendant that occur after registration, would dull that incentive. *Id.*

Although recognizing *Mason*'s general rule, the district court concluded that it did not apply because Hammond's postregistration infringements were "different in kind" from its preregistration infringements. That difference in kind exists, according to Southern Credentialing, if the preregistration infringement and the postregistration infringement violate different exclusive rights of a copyright holder. The district court found that to be the case here because Hammond's preregistration infringement reproduced the copyrighted forms (violating 17 U.S.C. § 106(1)), whereas its postregistration infringement distributed the forms by making them publicly available on its website (violating 17 U.S.C. 106(3)).

No court has previously applied Southern Credentialing's approach[3] and one district court in this circuit has persuasively rejected it. *Qualey v. Caring Ctr. of Slidell*, 942 F. Supp. 1074, 1076−77 (E.D. La. 1996). In *Qualey*, a city had prepared derivative works of an engineer's floor plans before the plaintiff registered them (a violation of 17 U.S.C. § 106(2)), and then later distributed the derivative work to contractors (a violation of 17 U.S.C. § 106(3)). *Id.* at

---

[3] Southern Credentialing relies on the Ninth Circuit's statement that "the first act of infringement in a series of ongoing infringements *of the same kind* marks the commencement of one continuing infringement under § 412." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008) (emphasis added). But that defendant distributed garments with the same infringing tag before and after the plaintiff registered its copyright, rendering the "same kind" language unnecessary to the court's holding. *Id.* Southern Credentialing points to no court ever awarding statutory damages for postregistration infringement on the ground that it violated a different right than the preregistration infringement.

1075. The court reasoned that *Mason*'s rationales applied with equal force when infringement occurring before and after registration violates different rights protected by copyright law.

We agree that section 412 bars statutory damage awards when a defendant violates one of the six exclusive rights of a copyright holder preregistration and violates a different right in the same work after registration.[4] Any other conclusion would be inconsistent with the Copyright Act, which does not distinguish between "different" infringements. *See Qualey*, 942 F. Supp. at 1076–77; 2 NIMMER ON COPYRIGHT §7.16(c) (2019) ("The bar on awarding heightened damages applies . . . even if the sole defendant, after registration, engaged in a different type of infringement from its pre-registration conduct."). Under Southern Credentialing's theory, statutory damages would not be available when a defendant prepares a derivative work preregistration and then prepares a separate derivative work postregistration. Yet statutory damages would be available when a defendant prepares a derivative work preregistration and then distributes copies of that derivative work postregistration. Differential treatment of those scenarios would be at odds with the basic copyright principle that each violation of a section 106 right is a coequal infringement. 17 U.S.C. § 501(a) ("Anyone who violates *any* of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." (emphasis added)). We see no textual, precedential, or logical reason why

---

[4] We do not decide whether section 412 would bar statutory damages and attorney's fees if there were a substantial gap in time between preregistration and postregistration infringement, as Hammond's infringing conduct continued without interruption. In dicta, the Second Circuit has suggested this was a possible distinction justifying an award of statutory damages when the defendant ceased infringing for approximately ten years, during which time the plaintiff registered its copyright. *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158–59 (2d Cir. 2007). The leading copyright treatise also recognizes that such a gap in time could be a basis for permitting statutory damages for a postregistration infringement. 2 NIMMER ON COPYRIGHT §7.16(c) (2019).

infringements occurring after registration are more worthy of punishment because they are "different in kind" from those occurring earlier.

Harmonizing the Copyright Act provisions authorizing and limiting statutory damages as we did in *Mason*, it remains the case that Congress prohibited statutory damages when "any infringement" precedes registration. Maintaining this rule even when the infringements are "different in kind" promotes the incentive for early registration that Congress created. *Qualey*, 942 F. Supp. at 1077.

The unavailability of statutory damages in this situation does not mean there is nothing to deter postregistration infringements. Actual damages are available when a plaintiff can prove them. Although Southern Credentialing was unable to do so, it obtained another remedy that protects against future infringement: an injunction.

\* \* \*

The judgment is AFFIRMED IN PART and REVERSED IN PART. The case is REMANDED for entry of an amended judgment without statutory damages or attorney's fees.